UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

JOY BROWN, *et al.*,

    Plaintiffs,

vs.

GREENE COUNTY VOCATIONAL
SCHOOL DISTRICT BOARD OF
EDUCATION,[1] *et al.*,

    Defendants.

Case No. 3:24-cv-14

District Judge Michael J. Newman
Magistrate Judge Caroline H. Gentry

**ORDER GRANTING, IN PART, PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION (Doc. No. 23)**

Plaintiffs Joy Brown and Jacob Brown bring this case on behalf of their minor son, Plaintiff J.B., asserting claims under 42 U.S.C. § 1983 for alleged violations of J.B.'s rights under the Fourth and Fourteenth Amendments to the United States Constitution.  Doc. No. 1.  Plaintiffs' complaint also asserts claims under the Americans with Disability Act ("ADA"), the Rehabilitation Act, and Ohio law.[2] *Id.* at PageID 13-18.  Defendants are Greene County Career Center Board of Education ("Defendant Board"); David Deskins, superintendent of the Greene County Career Center School District; and Maurice Harden, a teacher at the Greene County Career Center in Greene County, Ohio.  *Id*. at 3.

This case is before the Court on Plaintiffs' motion for a preliminary injunction.  Doc. No. 23.  The Court previously issued a temporary restraining order prohibiting Defendant Harden from

---

[1] Plaintiffs' complaint identifies Greene County Vocational School Board of Education as a Defendant.  This Defendant clarified that the correct name of the school is Greene County Career Center.  Doc. No. 24 at PageID 425.
[2] There is no present dispute that this Court may exercise federal question jurisdiction in this case pursuant to 28 U.S.C. § 1331 and, if necessary, supplemental jurisdiction under 28 U.S.C. § 1367.

returning to the classroom. Doc. No. 5. The temporary restraining order is set to expire on February 15, 2024. Doc. No. 11. The Court held a preliminary injunction hearing on February 7, 2024 from 9:30 A.M. to approximately 4:50 P.M. Doc. No. 18. All parties have submitted post-hearing briefs. Doc. Nos. 22, 23, 24. Thus, this motion is ripe for review.

## I.  BACKGROUND

Plaintiff J.B. has cerebral palsy and is a student at the Greene County Career Center ("GCCC"). Doc. No. 18 at PageID 106, 108. J.B. testified that Harden has pushed a table into his stomach and pushed him out of his chair—sometimes onto the floor—between ten and fifteen times this school year. *Id*. at PageID 118. J.B. also states that Harden grabbed his bookbag and threw it against the wall, breaking his deodorant. *Id.* On another occasion, Harden allegedly grabbed J.B.'s hand, pulled him close, and bent his fingers back. *Id*. at PageID 117-18. Finally, J.B. testified that Harden uses profanity directed at him. *Id.*

Plaintiffs introduced a video into evidence. *Id.* at PageID 111 (referencing Plaintiffs' Exhibit 14). This video was taken by another GCCC student, Gabe Colaric, in December 2023. *Id*. at PageID 113. The video shows J.B. lying on the floor with Harden standing over him. *Id.* at PageID 240. Harden can be heard yelling at J.B. that he is "tired of getting calls about your crazy ass." *Id.* at PageID 188.

Plaintiffs also presented the expert testimony of Licensed Professional Clinical Counselor Jean Sullenberger. *Id.* at 268. Sullenberger never met or treated J.B. *Id.* at PageID 287. Her testimony was based upon how physical, emotional, and verbal abuse may affect someone generally or in hypothetical situations. *Id.* Sullenberger testified that Harden's behavior in the video constitutes emotional and verbal abuse, and that pushing students out of their chairs would constitute physical abuse. *Id.* at PageID 293-95.

2

Colaric—the student who filmed the video—testified that Harden has pushed him to the floor approximately ten times, but that he felt Harden was just "playing around." *Id.* at PageID 160. At one point, Harden picked Colaric up and pinned him on a table. *Id.* at 156. Colaric stated that Harden would frequently greet students with a hug or a handshake that involved interlocking fingers. *Id.* at PageID 152-53. However, Colaric indicated that Harden did not purposely cause pain. *Id.* at PageID 153. Additionally, Colaric testified that Harden gave him the nickname "Black White Gabe" because he is white but "act[s] like [he's] black." *Id.* at PageID 167. Colaric stated that he does not feel comfortable with the "horseplay" that occurs in Harden's classroom. *Id.* at PageID 170.

In addition to J.B. and Colaric, two other students testified at the hearing: K.L. and T.L. K.L. confirmed that Harden used profanity in the classroom and pushed tables into students, but stated that Harden does not mean any harm and the classroom environment is welcoming, fun, and caring. *Id.* at 234, 241. K.L. testified that all students, including J.B., would laugh and participate in "joking around" with Harden. *Id.* at PageID 237. J.L. also testified that J.B. participated in joking interactions with Harden. *Id.* at PageID 254. J.L. stated that he has not seen Harden push J.B. or any other student. *Id.* at PageID 254, 256. However, he did indicate that the class was "divided" over Harden's actions. *Id.* at PageID 257.

GCCC received notice of Plaintiffs' allegations on December 18, 2023. *Id.* at PageID 331. Defendant Deskins testified that the school took immediate action. *Id.* at PageID 180. The next day, GCCC suspended Harden from his teaching position pending an investigation. *Id.* During the investigation, the principal interviewed Harden's students. *Id.* GCCC communicated with law enforcement and Family Services, neither of which opened an investigation of their own. *Id.* at PageID 180, 190. Deskins admitted that Harden's behavior was "inappropriate" and "serious,"

3

and that "the incident itself created alarm and concern." *Id.* at PageID 186, 190. While Deskins stated that student safety was a priority for GCCC, many students expressed positive views of Harden. *Id.* at PageID 357. Harden has been a teacher for eight years and has not had disciplinary action in the past. *Id.* at PageID 360. After balancing all the relevant information from the investigation, GCCC suspended Harden without pay and placed him on a very strict last-chance agreement prohibiting him from engaging in any form of misconduct, including, presumably, the type of misconduct alleged in Plaintiffs' complaint. *Id.* at PageID 362-63. The last-chance agreement also provides that if Harden engages in such misconduct in the future, he will either resign or be immediately terminated from his position. *Id.* at PageID 363. Additionally, Harden will undergo training on classroom behavior management and interacting with students. *Id.* at PageID 364.

With the last-chance agreement in place, Harden returned to the classroom on January 16, 2024, apparently based, in part, on the requirements of a Collective Bargaining Agreement. *Id.* at 374-75. Plaintiffs asserted in a status conference that J.B. did not attend school on January 16 or 17 because of Harden's return to the classroom. The Court then issued a temporary restraining order on January 17, 2024 preventing Harden from teaching until a preliminary injunction hearing could be held. Doc. No. 5. Plaintiffs now seek a preliminary injunction "for the remainder of the 2023-2024 school year preventing Defendant Harden from teaching, either virtually or in person, any class at the Greene County Career Center or entering the Greene County Career Center." Doc. No. 23 at PageID 403.

## II. PRELIMINARY INJUNCTION ANALYSIS

Preliminary injunctions are "extraordinary remed[ies] never awarded as of right." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008) (citing *Munaf v. Green*, 553 U.S.

4

674, 689-90 (2008)). Courts should order preliminary injunctions "only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000)). The burden of "proof required for [a] plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion[.]" *Leary*, 288 F.3d at 739.

To determine whether a preliminary injunction should issue, the Court must balance four factors: "(1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction." *Id.* Sixth Circuit precedent dictates that "[t]hese factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together." *Commonwealth v. Beshear*, 981 F.3d 505, 508 (6th Cir. 2020).

### A. Likelihood of Success on the Merits

To obtain a preliminary injunction, a plaintiff must demonstrate, as noted, a strong likelihood of success on the merits. *See Wilson v. Williams*, 961 F.3d 829, 844 (6th Cir. 2020). However, Plaintiffs need only show the likelihood of success of one of their claims. *See, e.g., Planned Parenthood Sw. Ohio Region v. DeWine*, 931 F.3d 530, 534 (6th Cir. 2019). Because the Court finds Plaintiffs have shown the requisite likelihood of success on their Fourth Amendment claim, the Court only analyzes this claim.

To state a claim under § 1983, a plaintiff must: (1) allege the violation of a right secured by the Constitution and law(s) of the United States; and (2) show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

5

Plaintiffs allege that Harden violated J.B.'s Fourth Amendment rights on one or more occasions by pushing a table into J.B.'s stomach, pinning him to his chair, and standing over him while he was lying on the floor. Doc. No. 23 at PageID 407; Doc. No. 18 at PageID 118, 240. The Fourth Amendment protects the right of the people—including children at public school—to be free of unreasonable seizures. *Gregory v. W. Clermont Local Sch. Dist. Bd. Of Educ.*, 414 F.Supp.3d 1064, 1076 (S.D. Ohio 2019). To determine whether a public-school official violated the Fourth Amendment, the Court must analyze: (1) whether a seizure occurred; and, if so, (2) whether that seizure was unreasonable. *Id.*

First, a seizure typically occurs when a reasonable person would not feel free to leave. *Kouider v. Parma City Sch. District Bd. of Educ.*, 480 F.Supp.3d 772, 785 (N.D. Ohio 2020). However, "in the school context, courts consider whether 'the limitation on the student's freedom of movement … significantly exceed[ed]'" the inherent compulsory attendance that generally prohibits students from leaving the school. *Gregory*, 414 F.Supp.3d at 1076 (quoting *Crochran v. Columbus City Sch.*, 748 Fed. App'x 682, 685 (6th Cir. 2018). Courts have found that physically restraining a student in a way that limits the movement of his or her body or limbs constitutes a seizure. *See, e.g., Kouider*, 480 F.Supp.3d at 785-86 (finding a school official restraining a student "by physically removing him from the playground[,]" restraining him on a bench, "and detaining him in the principal's office" constitutes a seizure); *Crochran*, 748 Fed. App'x at 685 (concluding that placing a student in a "body sock" is a seizure).

Plaintiffs have shown a seizure of J.B.'s person likely occurred when Harden pushed a table into J.B.'s stomach, pinning him to his chair. J.B. testified that Harden has either pushed a table against him or pushed him out of his chair ten to fifteen times. Doc. No. 18 at PageID 118. Another student confirmed that Harden has pushed tables into students. *Id.* at 241. By physically

6

retraining J.B. with a table in a way that limited his ability to move his body, Harden's actions constituted a seizure under the Fourth Amendment. *See, e.g., Kouider*, 480 F.Supp.3d at 785-86.

Second, to determine whether a seizure is unreasonable, the Court considers: "whether the seizure was justified at its inception" and "whether the seizure was permissible in its scope." *Crochran*, 748 Fed. App'x at 685. When a student is being disruptive or acting out, it is generally justified for a school official to use some form of restraint to prevent the student from hurting himself or others. *See, e.g., Kouider*, 480 F.Supp.3d at 786 (finding it reasonable to physically move and restrain a student who acted out on a playground slide and ran into the parking lot).

At this stage in the proceedings, the evidence shows that J.B. was not being disruptive or acting out when Harden pushed the table and pinned him to his chair. J.B. testified that he would just "be sitting at [his] desk" when Harden would push the table against him. Doc. No. 18 at PageID 118. While J.B. admitted he has gotten in trouble for playing on his phone in another class, no evidence was presented contradicting J.B.'s testimony that Harden restrained him without any justification. *See* Doc. No. 18 at PageID 136. Plaintiffs have thus shown the necessary likelihood of success on the merits on their Fourth Amendment claim.

### B. Irreparable Harm to Plaintiffs

The Court also finds that J.B. would suffer irreparable harm if Harden returned to J.B.'s classroom. For irreparable harm to meet the standard for a preliminary injunction, "the harm alleged must be both certain and immediate, rather than speculative or theoretical." *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991) (citing *Wis. Gas Co. v. Fed. Energy Regul. Comm'n*, 758 F.2d 669, 674 (D.C. Cir. 1985)). However, "irreparable harm is presumed in cases of constitutional violations." *Castillo v. Whitmer*, 823 Fed. App'x 413, 417 (6th Cir. 2020). Moreover, courts have found that "[v]iolations of the Fourth Amendment

constitute irreparable harm sufficient to justify injunctive relief." *Farm Lab. Org. Comm. v. Ohio State Highway Patrol*, 991 F.Supp. 895, 906 (N.D. Ohio 1997). If Harden is placed back into J.B.'s classroom, J.B. would be forced to either confront and obey the person who may have violated his Fourth Amendment rights or leave the school. *See* Doc. No. 23 at PageID 414. Thus, Plaintiffs have shown that J.B. would face irreparable harm if a preliminary injunction is not granted.

### C. Harm to Others

The Court finds that any harm to others that may occur due to the issuance of a preliminary injunction does not outweigh the harm Plaintiffs will suffer in the absence of preliminary injunctive relief. Although Harden teaches a specialized lab to seniors in a vocational program, which makes it difficult to find substitute teachers, *see* Doc. No. 18 at PageID 369, another qualified teacher at the school teaches the same lab to juniors. *Id.* at 375. While it may be inconvenient to reassign this teacher, he or she could theoretically teach the senior lab for the rest of the school year. GCCC has proposed that Harden could teach the junior lab virtually, which would allow the junior lab teacher to cover the senior lab. *Id.* at 213-14. This means that students in the senior class would get a specialized education in the program without Harden ever interacting with J.B. for the remainder of the school year. Therefore, Plaintiffs have shown that the harm of preventing Harden from teaching J.B's class does not outweigh the harm J.B. would suffer without a preliminary injunction.

### D. Promotion of the Public Interest

Finally, the Court finds that the public interest is best served by granting preliminary injunctive relief and keeping Harden physically separated from J.B. for the remainder of the school year. Because Plaintiffs have demonstrated a strong likelihood of success on the merits of their Fourth Amendment claim, and knowing that "it is always in the public interest to prevent the violation of a party's constitutional rights[,]" *see G&V Lounge, Inc. v. Mich. Liquor Control*

*Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994), it follows that the remedy here serves the public interest. Further, "there is significant public interest in maintaining school safety." *J.L. v. Williamson Cnty.*, No. 23-5704, 2023 U.S. App. LEXIS 23453, at *12 (6th Cir. 2023) (citing *Turner v. Sw. City Sch. Dist.*, 82 F. Supp. 2d 757, 768 (S.D. Ohio 1999)). Thus, Plaintiffs have shown that a preliminary injunction promotes the public interest.

### III. SCOPE OF RELIEF

"Crafting a preliminary injunction is an exercise of discretion and judgment[.]" *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 579 (2017). The purpose of a preliminary injunction is "to balance the equities as the litigation moves forward." *Id.* To do this, the Court may modify the type or degree of relief to best fit the particular situation. *Id.*

Plaintiffs' requested relief asks the Court to prohibit the Defendant Board from returning Harden to the classroom either in person or virtually and to enjoin Harden from entering onto school property. Doc. No. 23 at PageID 419. This requested relief stands in stark contrast to Superintendent Deskins' recommendation and the Board's decision to return Harden to the classroom subject to the terms of the Last Chance Agreement. For the reasons that follow, the Court finds that although Plaintiffs have shown a preliminary injunction is warranted, the scope of their requested injunction will be more limited than they request and more limited in scope than the previously-issued TRO. The preliminary injunction will allow the Board to implement a plan to return Harden to teaching subject to the terms of the Last Chance Agreement so long as Harden is not allowed to teach—or come in contact with—J.B. at GCCC.

This preliminary injunction should not be understood as any indication that Harden's past misconduct should be tolerated in the future. Indeed, the Court empathizes with Plaintiffs' genuine concern about—and the paramount need to ensure—J.B.'s safety while he attends GCCC

9

due to Harden's past unprofessional and reprehensible misconduct. *See, e.g.*, Hearing Exhibit P5 (Last Chance Agreement in which Harden acknowledged that "[he] engaged in misconduct that violates Board Policy"). However, the federal courts generally lack expertise in secondary vocational school administration and school personnel matters, particularly when compared to Superintendent Deskins who has been the Superintendent of GCCC for approximately ten years and who has intimate knowledge of how his recommendations and Defendant Board's decisions impact students, teachers, and administrators. Additionally, after learning in December 2023 about the allegations concerning Harden, Superintendent Deskins instituted a prompt, thorough, and remedial investigation, suspended Harden without pay, provided him with a due-process hearing, consulted the Collective Bargaining Agreement, and engaged in an evidence-based evaluation of the possible options, including the option of terminating his employment. The option Superintendent Deskins and the Board selected, returning Harden to the classroom under the Last Chance Agreement, was the harshest action the Board could take under the Collective Bargaining Agreement except for terminating his employment. Further, the terms of the Last Chance Agreement essentially leave Harden no option but to resign if he violates its terms. *See* Hearing Exh. P5 at p. 1 ("any further misconduct may result in the Superintendent requesting the Employee's resignation from employment …"; "Employee agrees that he will tender his irrevocable resignation from all employment with the Board if requested by the Superintendent …"). For all these reasons, the Court defers to the Board's decision to return Harden to teaching under the terms of the Last Chance Agreement. However, the Court's preliminary injunction prohibits Harden from teaching J.B.'s class and from coming in contact with J.B. at GCCC.

One final matter: During the preliminary injunction hearing, Defendant Board's counsel stated, "We have offered before -- we would offer again -- that in the alternative, we would be

willing to have Mr. Harden teach remotely through the end of the school year, and not [J.B.] ….." Doc. No. 18 at PageID 328.  In the Court's opinion, this presents a viable solution that will save the parties the expense of ongoing litigation and will bring certainty to a still uncertain situation that, despite this preliminary injunction, will continue until the end of the current school year.  Uncertainty exists in the possibility, no matter how unlikely, that Harden might violate the terms of the Last Chance Agreement.  Given the Board's offer, through counsel, the parties are encouraged to further discuss settlement or mediation of this case.  In the event they desire mediation, the Court will refer the case to United States Magistrate Judge Caroline H. Gentry.

Having considered the relevant factors, the Court finds that a preliminary injunction is warranted.  Plaintiff's motion for preliminary injunction is **GRANTED IN PART**.  The Board may implement a plan to allow Harden to teach subject to the terms of the Last Chance Agreement, so long as Harden does not teach J.B. and does not come in contact with J.B. at GCCC.

**IT IS SO ORDERED.**

February 14, 2024                                          s/Michael J. Newman
                                                           Hon. Michael J. Newman
                                                           United States District Judge